NEW JERSEY DEPARTMENT OF LABOR,
WORKMEN'S COMPENSATION BUREAU.

FRANCES MOORE, PETITIONER, v. CITY OF PATERSON, RESPONDENT.

Decided September 5, 1939.

For the petitioner, *Nathan Rabinowitz*.

For the respondent, *Salvatore D. Viviano*.

The above matter coming on for hearing, and having been submitted to me for decision, I hereby find and determine as follows:

This is a proceeding brought by Frances Moore, widow and sole dependent of Edward Joseph Moore, against the city of Paterson, under an act entitled "An act prescribing the liability of an employer to make compensation for injuries received by an employe in the course of employment, establishing an elective schedule of compensation and regulating procedure for the determination of liability and compensation thereunder," approved April 4th, 1911, and the acts amendatory thereof and supplemental thereto, to recover compensation for his death by accident arising out of and in the course of his employment as a fireman of the city of Paterson.

I find from the proofs that on July 11th, 1938, Edward Joseph Moore, husband of petitioner, was a member of the fire department of the city of Paterson. On that day he was on twenty-four hour duty and shortly before five P. M., he ate his supper, consisting of sandwiches and hot coffee, at the fire house. A few minutes after five, while he was on the second floor of the fire house, an alarm was sounded. At that time two of the members of his company were off duty, leaving three men to answer the call. Decedent's duty was that of a hoseman and in connection therewith he mounted the rear part of the automobile fire truck and proceeded to the fire which was at Lewis street and Beckwith avenue, Paterson, New Jersey, in the plant of the Wright Aeronautical Company. When the truck arrived at the scene of the fire, decedent left the truck and proceeded to get enough hose off the truck to attach it to the hydrant. He connected the hose to one of the outlets of the hydrant and after that was done, he approached one of his superior officers approximately three or four hundred feet from the hydrant and made inquiry of him as to whether or not he should turn on the water. He was given the signal to turn on the water, whereupon he

turned around running in the direction of the hydrant, apparently for that purpose. The water was subsequently turned on and he was found slumped over at the hydrant, then fell to the sidewalk with the wrench which was used to turn on the water, lying on the ground a few feet away from him. This wrench was a part of the ordinary equipment used by the firemen for the purpose of turning on the water. In turning on the plug of the hydrant, certain physical effort was required by the deceased, the testimony showing that probably eight or nine turns were required with the wrench in order to release the water. It was shown that just before decedent collapsed his facial appearance gave indication of pain. He was in physical distress, his complexion changed from that of a flush to that of a pale complexion, he vomited foodstuff and finally fell to the sidewalk on his stomach, face down. Two men nearby came to his assistance attempting to sit him up and revive him, but to no avail. Eventually Dr. Briody, the fire department surgeon, made a physical examination, pronounced him dead, giving his opinion that the death was due to acute cardiac dilatation.

Respondent contends that deceased did not die from injuries sustained in an accident arising out of and in the course of his employment and that decedent did not meet with an accident resulting in his death, but that his death was due to natural causes. Petitioner, however, contends that this case is in line with the cases where death is due to over-exertion or physical effort, particularly where the accident, as here, was suffering from a predisposing cause, a disease of the heart, prior to the date in question, with degenerative changes consisting of arteriosclerosis and hypertension.

There is no question, through the medical testimony that has been adduced by respondent's physicians as well as those of the petitioner, that the decedent was suffering from cardio degeneration, hypertensive heart, a beginning decompensation, arteriosclerosis and high blood pressure. The decompensation of the heart, the arteriosclerosis, the hypertension and high blood pressure were found by Dr. Cremens, who made a physical examination of the petitioner several days

before the fatal occurrence at which time he found his blood pressure was much over two hundred. The proofs are persuasive that decedent died from acute dilatation of the heart and I so find.

In *Geizel* v. *Regina Manufacturing Co.*, 96 *N. J. L.* 31; 114 *Atl. Rep.* 328; *affirmed, 97 N. J. L.* 331; 116 *Atl. Rep.* 924, it was held that where one suffers a physical illness or disease, and then meets with an accident which brings into acute activity the diseased conditions, which hastens, or causes death, such an accident is within the purview of the Workmen's Compensation act and compensable as such.

In the case at bar, I am convinced that had decedent not answered the alarm on the day in question, which was a very warm day, and been put through the various acts of physical exertion testified to, and the excitement that always accompanies the answering of a call to a fire, he would not have died of acute heart dilatation on that day. There is no question in my mind that the death taking place on that day in his impaired state of health was due to the demands made upon him by his employment.

In *Winter* v. *Atkinson-Frizelle Co.*, 88 *N. J. L.* 401; 96 *Atl. Rep.* 360, a case of acute dilatation of the heart, decedent fell while on the job striking his chest. He was examined after the accident and found to have a heart irregularity and aneurysm of the aorta. About a month after this accident, while doing some heavy lifting, he fell dead. It was held that the exertion in connection with the heavy lifting was an accidental injury and that the death was caused by accidental injury notwithstanding the predisposing condition that decedent was suffering from prior thereto.

In *Bernstein Furniture Co.* v. *Kelley*, 115 *N. J. L.* 500; 180 *Atl. Rep.* 832, the decedent was engaged as a delivery man in moving furniture. While delivering some furniture from a truck, he carried a heavy settee up several flights of stairs to the fourth floor of an apartment house, put it down at the place where he was to deliver it, went to the window, slumped over and died. He did not strike his head or body as he fell. The incident was held to be an accident and the death was held to arise by reason of an accident occurring out of and in the course of the employment.

In the recent case of *Bollinger* v. *Wagaraw Building Supply Co.,* 122 *N. J. L.* 512; 6 *Atl. Rep.* (2*d*) 396, it was held that death from disease alone *during* the employment will not suffice, but injury or death which on proofs that are sufficient and persuasive, would not have occurred but for the services rendered in the employment, amount to injury by accident. I am satisfied, and I find, that but for the efforts that were put forth by the decedent in fighting this particular fire and the exertions and excitement incident thereto, the decedent's death would not have happened on that day and at the time that it did happen. This conclusion is supported not only by the testimony of petitioner's medical witnesses, but in a great measure by respondent's medical witnesses as well.

I am satisfied and find that the unusual exertion and strain under which deceased labored just prior to as well as at the time of the actual fighting of the fire, are all connecting links making a complete chain of causation resulting in the heart attack and death.

I, therefore, find, analyzing both medical and lay testimony, that petitioner has sustained the burden of proof showing that decedent, Edward Joseph Moore, met with an accident which arose out of and in the course of his employment resulting in his death.

The testimony shows that petitioner was living with deceased, her husband, at the time of the death, had so been for many years prior thereto, was being supported by him, and was part of his household, and I, therefore, find petitioner is entitled to the benefits of the Workmen's Compensation act as a total dependent.

The wages of the deceased were twenty-three hundred ($2,300) dollars a year, making his weekly rate forty-four dollars and twenty-three cents ($44.23) making the dependency rate fifteen dollars and forty-eight cents ($15.48) which is thirty-five per cent. of same.

\*　　　\*　　　\*　　　\*　　　\*　　　\*　　　\*

JOHN J. STAHL,
*Deputy Commissioner.*